ATLANTIC COAST LINE RAILROAD COMPANY and Seaboard Air Line Railroad Company, Plaintiffs,

and

Swift and Company, Intervening Plaintiff,

v.

UNITED STATES of America, Defendant,

and

Interstate Commerce Commission, Alcoa Steamship Company, Inc., Marine Transport Lines, Inc., and Tampa Terminals, Inc., Intervening Defendants.

Civ. No. 4747.

United States District Court
S. D. Florida.

Sept. 10, 1962.

David E. Wells, Prime F. Osborn, Jacksonville, Fla., Donald L. Turkal, Erle V. Zoll, Jr., Robert E. Northup, Richmond, Va., John S. Cox, Cox, Grissett, MacLean & Webb, Jacksonville, Fla., for plaintiffs.

Clarke Munn, Jr., Chicago, Ill., for intervening plaintiff.

Lee Loevinger, Asst. Atty. Gen., Richard A. Solomon, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Jacksonville, Fla., for United States.

Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Asst. Gen. Counsel, I. C. C., Washington, D. C., for Interstate Commerce Commission.

Harold B. Wahl, Jacksonville, Fla., and John Cunningham, T. S. L. Perlman, Washington, D. C., for intervening defendants Alcoa Steamship Co. Inc. and Marine Transport Lines, Inc.

Donald MacLeay and Harold E. Mesirow, of MacLeay, Lynch & McDonald, Washington, D. C., Harry C. Kincaid, of Knight, Kincaid, Poucher & Harris, Jacksonville, Fla., for intervening defendant Tampa Terminals, Inc.

Before JONES, Circuit Judge, and SIMPSON and McRAE, District Judges.

JONES, Circuit Judge.

The plaintiffs are competing rail carriers which serve, among other areas, the territory between Florida and Virginia. Prior to September 24, 1960, the plaintiffs' carload rate for hauling phosphate rock from Florida points to Norfolk, Virginia, and nearby points, was $5.36 per ton. The plaintiffs published a tariff to become effective on September 24, 1960, of $4.75 on such shipments. Protests were made to the Interstate Commerce Commission by two water carriers, Alcoa Steamship Company and Marine Transport Lines, Inc., and by Tampa Terminals, Inc., which operates a facility for the storage and loading of phosphate for shipment by water at the port of Tampa, Florida.[1] The Commission suspended the rate under Section 15(7) of the Interstate Commerce Act, 49 U.S.C.A. § 15(7), for a seven-month period which ended April 23, 1961. On that date the lower rate became effective. A hearing was had before the Commission which found that the reduced rate was not just and reasonable. An order was entered cancelling the new rate. The plaintiffs, by petition, sought a reconsideration and a further hearing, offering to show that the revenues actually produced by the lower rate exceeded the Commission's estimate. The petitions were denied. This action was brought to review the Commission's orders. Upon the institution of the action a stay order was entered which kept the lower rate in effect.

There were seven regular users in the Norfolk area of the phosphate rock subject to the rate controversy. Of these there were three[2] which received their shipments by water transportation, and three[3] which obtained their shipments by rail. The seventh, the intervening plaintiff Swift and Company, formerly received the most of its phosphate rock shipments by water but prior to the proceedings had switched to rail for all of its shipments. The plaintiff rail carriers asserted that the new rate was necessary if they were to retain the traffic they then enjoyed and prevent its diversion to the water carriers. They contended that the new rate was, under the circumstances, just and reasonable.

The Commission found insufficient evidence to persuade it that the shippers

---

1. All of whom have intervened in this cause.

2. Smith-Douglas Company, F. S. Royster Guano Company and Robertson Chemical Company.

3. Virginia-Carolina Chemical Company, Weaver Fertilizer Company and Farmers Cotton Oil Company.

using rail transportation had the facilities for receiving shipments by water or any plans for acquiring such facilities, or that they would spend the funds necessary to acquire such facilities. The Commission concluded that the fear of the rail carriers that they would lose the traffic if the rate was not reduced was not well founded. Although the new rate was somewhat in excess of out-of-pocket costs, the Commission found that because of the resulting loss in net revenue the new rate was not just and reasonable. The plaintiffs here seek to have the Commission's order set aside on two grounds, first, that the Commission exceeded its statutory powers, and second, that it abused its discretionary powers.

■ The rail carriers take the position that the power of the Commission to disapprove rates which are not just and reasonable does not authorize it to reject a rate as being unjust and unreasonable merely because it would result in a reduction in net revenues. The Commission's action, say the rail lines, is a usurpation of a power not granted to it and an encroachment upon a field reserved to management in which it may exercise its judgment. It is, of course, upon the Commission that the Congress has conferred jurisdiction to determine whether rates are just and reasonable. It is for the courts to decide whether the Commission's findings are supported by substantial evidence,[4] and whether there is a rational basis for the Commission's conclusions.[5]

■ The Commission considered the evidence on the issue of whether the plaintiffs would lose the phosphate rock hauls if the prevailing rate was continued. On sufficient evidence the Commission determined that the rail carriers' belief that a lower rate was essential to a retention of the traffic was without foundation. While this finding involves a prediction of the future action of shippers it does not follow that the finding is unsupported or that the Commission was without jurisdiction to make it. The Commission is not to be stripped of its power to determine the lawfulness of a rate because a forecast as to the future is a factor which it, in the exercise of its expert judgment, is required to consider. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38.

■ The plaintiffs strongly urge that where it appears, as it does in this case, that the rate will produce sufficient revenue to cover the out-of-pocket cost of rendering the service, the rate is a lawful one and the Commission is without power to disapprove the rate as not being just and reasonable. Without limiting the matters which the Commission may consider, the Congress has specified some [6] of the factors which it must consider. Among these is the need of revenue sufficient to enable carriers to provide efficient transportation service. The Commission held that the loss in revenue which would result from the rate reduction, considered in the light of the critical need of the rail carriers for increased revenues, required a determination that the proposed rate was not just and reasonable. This determination was within the powers entrusted to the Commission. The Commission, charged with the duty of carrying out the national policy of so regulating carriers as to provide efficient

4. Minneapolis & St. Louis Railway Co. v. United States, 361 U.S. 173, 80 S.Ct. 229, 4 L.Ed.2d 223, reh. den. 361 U.S. 945, 80 S.Ct. 405, 4 L.Ed.2d 365.

5. Mississippi Valley Barge Line v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L. Ed. 1260.

6. In the exercise of its power to prescribe just and reasonable rates the Commission shall give due consideration, among other factors, to the effect of rates on the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient railway transportation service at the lowest cost consistent with the furnishing of such service; and to the need of revenues sufficient to enable the carriers, under honest, economical, and efficient management to provide such service. 49 U.S. C.A. § 15a(2).

service and foster sound economic conditions,[7] was both empowered and justified in making a decision that would not reduce the contribution of the phosphate rock tariffs to the net revenues of the plaintiffs.

■■ The plaintiffs, by a petition for reconsideration, asserted that the estimates made by the Commission of the revenue losses that would follow the lower rate were incorrect. They sought to have the proceedings reopened so that it might be shown that the tonnage per carload had been more than was included in the projected figures of the Commission. This, say the plaintiffs, would change the net revenue figures on the movements and would call for a redetermination of the lawfulness of the rate. The Commission denied the petition "for the reason that sufficient grounds have not been presented to warrant granting the action sought." Whether or not a rehearing is to be granted by the Interstate Commerce Commission rests within its discretion. Although in an exceptional case for a clear abuse of discretion the court may require the Commission to reopen a proceeding,[8] such action will be taken only where a showing has been made of such a clear abuse of discretion as to be tantamount to the denial of a right.[9] No such showing has been made here. The computation of revenues and of the loss of net revenue had been based upon projected carloadings of 71.4 tons. The evidence which plaintiffs tendered would show that since the lower rate became effective the average loading is about 75 tons. The rate formerly used was for minimum carloads of 70 tons. The Commission could not be expected to approve, on rehearing, a rate which it has found to be unlawful upon a showing that cars have been loaded in excess of the minimum. Such a showing would not create any change in the minimum load required of a shipper nor commit a shipper to continue to load in excess of the minimum. It was not made to appear, upon the application for reconsideration, that the new evidentiary matter tendered would produce a different result. The denial by the Commission of the petition for reconsideration was not an abuse of discretion.

■ The conclusions above stated dispose of the case. Other matters urged and argued have been given consideration but need not be discussed. The determination of the Commission is based upon substantial evidence and is free from error in its application of legal principles. The stay order heretofore entered will be vacated, the relief sought by the plaintiffs will be denied and the cause will be dismissed. An appropriate order will be entered.

7. 54 Stat. 899.

8. Atchison, Topeka & Santa Fe Railway Company v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273.

9. Cf. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S. Ct. 1129, 88 L.Ed. 1420.