**BRASWELL MOTOR FREIGHT LINES, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

Civ. A. No. 67–29–A.

United States District Court
W. D. Texas,
Austin Division.

July 31, 1967.

Clark, Thomas, Harris, Denius & Winters, Phillip Robinson, James, Robinson, Felts & Starnes, Austin, Tex., Morris G. Cobb, Amarillo, Tex., for plaintiffs.

Ernest Morgan, U. S. Atty., San Antonio, Tex., Fritz R. Kahn, Chief, Section of Litigation, Office of Gen. Counsel, I. C. C., Washington, D. C., W. D. Benson, Jr., Lubbock, Tex., for defendants.

## OPINION

Before THORNBERRY, Circuit Judge, SPEARS, Chief Judge, and ROBERTS, District Judge.

SPEARS, Chief Judge:

This is an action to enjoin, annul and set aside a decision and order of the Interstate Commerce Commission which granted to Whitfield Transportation, Inc., a Certificate of Public Convenience and Necessity authorizing the conduct of certain motor carrier operations under the Interstate Commerce Act. 49 U.S.C. § 307(a). Since we are satisfied that the decision made and the procedures followed in this case were consistent with the applicable laws, the relief sought is denied.

This proceeding arose from an application filed by Whitfield with the Commission on July 30, 1964, seeking to operate as a common carrier by motor vehicle of general commodities, with certain exceptions, over specified routes, between Dallas, Texas and Albuquerque, New Mexico, on the one hand, and between Post, Texas and Tularosa, New Mexico, on the other.

The application was opposed by numerous carriers, including these plaintiffs, and, pursuant to 49 U.S.C. § 305, was assigned for hearing before Joint Board No. 33, composed of members from New Mexico and Texas. Appearing at the hearing as the New Mexico member was G. Y. Fails of the New Mexico State Corporation Commission. Texas waived its right to participate in the proceedings by failing to have a member present.

Joint Board No. 33 conducted hearings for a total of 22 days at Albuquerque, New Mexico, Las Cruces, New Mexico, and Dallas, Texas, extending over the period from November 9, 1964 to February 9, 1965, during which time all of Whitfield's evidence was presented, and after which a recess was called to allow the opposing carriers an opportunity to prepare their case. During the recess a New Mexico member of Joint Board No. 33 directed a telegram to the Commission, dated March 15, 1965, stating that:

"G. Y. Fails resigned therefore unable to complete Whitfield hearing Sub 99".

No request was made by New Mexico to substitute another member for Mr. Fails.

Based upon the actions of both states constituting the Joint Board, the Commission, by order dated March 26, 1965, and served on April 1, 1965, referred the matter to Examiner Samuel C. Shoup for continued hearing and the recommendation of an appropriate order, accompanied by the reasons therefor. Notice of this action was served upon all parties, as well as upon the New Mexico State Corporation Commission.

On April 12, 1965, the Illinois-California Express, Inc. (ICX), with Transcon Lines, Inc. (Transcon) concurring, filed a petition and motion contending that Joint Board No. 33 had not waived its participation, and requesting that the matter be re-assigned to that Board. The Commission, however, by order dated May 7, 1965, denied that request. Thereafter, commencing on May 10, 1965, and continuing for eight additional hearing days, the proceeding was presided over by

Examiner Shoup for the taking of the opposing carriers' evidence. Subsequently, on December 20, 1965, the examiner submitted his report and recommended order, which was adopted by the Commission in its order served on September 2, 1966.

This suit was filed on May 4, 1967 and a temporary restraining order pending "hearing and determination of this cause" was entered on May 5, 1967.

Plaintiffs here contend that the Commission's order is arbitrary, capricious, and void because (1) the application should not have been assigned for hearing before a hearing examiner after 22 days of hearings before Joint Board No. 33; (2) the order is not based upon and supported by substantial evidence; (3) the order is not predicated upon a stated rationale, or upon basic and essential findings of fact and conclusions of law; (4) the Commission failed to rule upon proposed findings, conclusions, and exceptions; (5) the existing transportation facilities and services are shown by substantial evidence to be adequate; and (6) the Commission failed to make findings concerning the National Transportation Policy.

I

By said petition and motion filed on April 12, 1965, ICX contended that Joint Board No. 33 "should be Hearing Official for the remainder of this proceeding—as it has been during the first 23 hearing days—under the provisions of the Interstate Commerce Act"; that to "make the change contemplated in the Commission's order served April 1st will not only be in conflict with the provisions of the Interstate Commerce Act but will also result in much confusion in the future conduct and handling of the matter"; that the Act "clearly provides for the Joint Board procedures in extension applications involving two states, and any deviation from those provisions this far along in the instant proceedings will adversely affect the interested parties, including this protestant"; and that the Commission should rescind its order of April 1, 1965 and re-assign the matter to

Joint Board No. 33 for the "continued hearing contemplated by the order".

In a brief filed on September 13, 1965, after the hearings had been concluded on May 20, 1965, the movants argued that the denial of their petition and motion had worked to their "material disadvantage and prejudice" because of a "dissimilarity" in the standards utilized by the two hearing officers. The examiner was of the opinion that the record revealed "no apparent indication wherein protestants have been prejudiced", and the Commission acquiesced in this when it adopted his report and recommendations.

■ From the facts hereinabove stated, it is clear that both Texas and New Mexico had withdrawn from any further participation in the Joint Board, and that the Commission merely substituted an examiner for the completion of the hearing and the issuance of a recommended report and order. After a review of the record, we are of the opinion that the Commission's action was proper, and that, in any event, plaintiffs, as protestants at the hearing, were not materially prejudiced by any variations in the standards employed by the officers,

It was not until exceptions and objection to the examiner's report and recommendations were filed on February 7, 1966, some nine months after the hearing was resumed, that plaintiffs for the first time raised the specific question concerning their right to have the recommended decision made by the *same* officer who presided at the reception of all evidence. They insisted then, as now, that the action of the Commission in referring the hearing to one of its own examiners deprived them of the kind of "credibility evaluation" contemplated in 5 U.S.C. § 1004(c) (now 5 U.S.C. § 554 (d)), and discussed in the case of Gamble-Skogmo, Inc. v. Federal Trade Commission, 211 F.2d 106 (8 Cir. 1954).

■ While we realize that from the legislative history of the Administrative Procedure Act it may be argued that 5 U.S.C. § 554(d) is not applicable here,[1] we do not consider it necessary to decide that question, because we are convinced that the "credibility evaluation" contention came too late.

Bearing in mind that Mr. Fails (the New Mexico member) had resigned, and protestants knew he was no longer available, it is significant that the only objection timely made by any of them with respect to the change of hearing officers, was that Joint Board No. 33, rather than the Commission's examiner, should continue with the hearing. Obviously, if someone other than Mr. Fails on the Joint Board from New Mexico, who was not present during the earlier hearing,

---

1. See S.Rep. No. 752, 79th Cong. 1st Sess. 17 (1945) where it is said: "The exemption of applications for initial licenses frees from the requirements of the subsection such matters as the granting of certificates of convenience and necessity which are of indefinite duration, upon the theory that in most licensing cases the original application may be much like rule making. The latter, of course, is not subject to any provision of section 5. The exemption of cases involving 'the past reasonableness of rates' (if triable de novo on judicial review they would be exempted in any event) is made for the same reason. There are, however, some instances of either kind of case which tend to be accusatory in form and involve sharply controverted factual issues. Agencies should not apply the exceptions to such cases, because they are not to be interpreted as precluding fair procedure where it is required." In Wong Yang Sung v. McGrath, 339 U.S. 33, at 50, 70 S.Ct. 445, at 454, 94 L.Ed. 616 (1949), which involved a deportation proceeding under the Immigration Act, the Supreme Court used the following language: "We think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. * * *" However, so far as we know, the Supreme Court has never had occasion to pass upon the applicability of Section 5(c) of the Administrative Procedure Act to a hearing on an application for a certificate of convenience and necessity before the Interstate Commerce Commission.

had presided after the recess, he would not have been in any better position to evaluate the credibility of witnesses who had previously testified, than was Examiner Shoup. So, in the very nature of things, the motion could not, by any stretch of the imagination, be construed as an objection to having anyone other than Mr. Fails proceed with the hearing. Nor was any motion made prior to the resumption of proceedings, in which it was contended that the evidence and record in the case to that point should be stricken, and that the substitute examiner, whoever he might be, should be required to engage in a de novo hearing, in order that he might have an opportunity to see and hear the opposing witnesses and evaluate their credibility. Instead, as noted, two of the protestants chose to rely upon the sole proposition that Joint Board No. 33, and not the Commission's hearing examiner, should continue with the hearing, and none of the other eleven protestants even saw fit to join in that objection.

In Gamble-Skogmo, Inc. v. Federal Trade Commission, supra, 211 F.2d 106, at 113, the Court pointed out that "the affording of the opportunity for such credibility evaluation and the according of the benefit to parties * * * are fundamentally procedural grants and prescriptions and, as previously indicated, not substantive due-process requisites".

The Supreme Court in United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54, had occasion to examine a situation in which hearings before the Interstate Commerce Commission had been conducted by an examiner not appointed pursuant to the Administrative Procedure Act. In holding that an objection to this "irregularity" made for the first time in District Court was "clearly an afterthought" and came too late, the Court used the following language:

"We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. *Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.*" (Emphasis ours).

We cannot speculate, of course, as to what the Commission would have done if the question of "credibility evaluation" had been presented to it at an appropriate time, which, in this instance, should have been on or before May 10, 1965 when the hearing resumed. If, based upon a proper and timely motion, the Commission had decided to grant a de novo hearing it could have saved at least the succeeding eight hearing days during which the protestants' case was presented. If it had chosen not to entertain such a motion, or not to grant a de novo hearing, the primary questions for resolution by the Court would then have been whether 5 U.S.C. § 554(d) was applicable, and, if so, whether a credibility evaluation could be said to have constituted "a salient element in a sound arriving-at of the controlling facts by an examiner". Supra, 211 F.2d 106, at 115. As indicated, however, we do not reach either question in this case.

■ From what has been said, we conclude that the "procedural guaranty"

discussed in Gamble-Skogmo, Inc. v. Federal Trade Commission, supra, 211 F.2d 106 at 113 (where, incidentally, timely motions were urged), which has as its object "to make direct credibility evaluation by a trial examiner constitute a processive element or factor in the arriving at of intermediate administrative findings, conclusions and decisions, submitted to an agency, in the functioning of the examiner system", requires that a request therefor be made at an appropriate time to be determined from the facts and circumstances of the particular case. In this connection, it would be repugnant to orderly procedure and good administration for a party who had failed during the progress of an administrative hearing to timely insist upon his rights, to be allowed later to successfully raise the issue if it should develop that the recommendations of the trial examiner, upon which the agency decision was based, were not to his liking.

We deem it proper to comment, in passing, that if an administrative agency has good reason to believe that a hearing before a Joint Board (or even before one of its own examiners for that matter) will be a long and complex one, it would be good practice to have a substitute examiner in attendance from the beginning (as it has a right to do under 49 U.S.C. § 305(a)) so that he might take over the hearing, if need be, without having to start the entire proceedings anew. The inordinate expense of such an involved hearing to applicants and protestants alike would seem to dictate this procedure in the interest of common sense, fairness and justice.

## II

We come now to plaintiffs' contentions that the Commission's order is not supported by substantial evidence, or based upon a stated rationale, or predicated upon basic and essential findings of fact and conclusions of law; and that the Commission failed to rule upon proposed findings, conclusions and exceptions, or to make findings concerning the National Transportation Policy.

Whitfield, in addition to three operating witnesses, three supporting motor carrier witnesses, and two technical witnesses, presented the testimony of 111 shippers or receivers of freight, representing 109 separate businesses, and one witness from a Chamber of Commerce. Ten protestants and two carriers offered evidence in opposition to the proposal.

The examiner's report and recommended order, together with the appendices, comprise some 63 pages. As previously indicated, the taking of testimony required approximately 30 hearing days, and the record contains 5753 pages in the transcript of the stenographer's notes, in addition to more than 300 exhibits.

The Commission, in the performance of its function as "the guardian of the public interest in determining whether certificates of public convenience and necessity shall be granted" has been entrusted with a "wide range of discretional authority". United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945). It is not required to make formal or detailed findings of fact with respect to the evidence in the record before it, so long as its report, read as a whole, discloses the essential basis of its judgment. Alabama G. S. R. Co. v. United States, 340 U.S. 216, 228, 71 S.Ct. 264, 95 L.Ed. 225 (1951). See also North American Van Lines, Inc. v. United States, 217 F.Supp. 837, 842 (N.D.Ind. 1963).

In our opinion, the findings and conclusions that a need exists for the proposed service, that the present service is inadequate, and that the proposed service would not have a material adverse effect upon opposing carriers and can be practically and economically performed, are in sufficient detail, completely adequate, and constitute a stated rationale; the proposed findings and conclusions not adopted by the Commission are considered to have been rejected; and the decision, including that portion adopted from the examiner's report, suf-

ficiently informed the plaintiffs as to the disposition of their exceptions. See N. L. R. B. v. Wichita Television Corporation, 277 F.2d 579, 585 (10 Cir. 1960), and North American Van Lines, Inc. v. United States, supra, 217 F.Supp. 837, 842 (N.D.Ind.1963).

Recently, in Illinois Central Railroad Co. et al. v. Norfolk & Western Railway Co. et al., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966), the Supreme Court again defined "substantial evidence" as "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury". 385 U.S. 57 at 66, 87 S.Ct. 255 at 260. Being convinced that there is substantial support in the record for the Commission's findings, we are not at liberty to substitute our own conclusions for those which the Commission has fairly drawn from such findings. Supra, 385 U.S. 57 at 69, 87 S.Ct. 255.

 With respect to the contention that the Commission failed to make findings concerning the National Transportation Policy, we think it is sufficient to quote from the opinion in T. S. C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777, 794 (D.C.1960), affirmed 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961), as follows:

> "The report of the Commission is a detailed, careful, and articulate exposition of its judgment as to the adequacy of the existing service, the present and probable future need for additional services, the desirability of such additional services as a result of a controlled competiton, and its judgment as to the effect the additional service will have on the existing carriers. Unless * * * special problems exist, it would be mere tautology for the Commission to repeat formal declarations in terms of the national transportation policy. Obviously the entire report with its many basic findings clearly demonstrates that the Commission applied 'its familiarity with transportation problems to these conflicting considerations.'"

The order of the Commission granting the Certificate of Convenience and Necessity involved herein is affirmed, the temporary restraining order entered on May 5, 1967 is hereby terminated and dissolved, and all relief sought by the plaintiffs is denied.