**B. D. C. CORPORATION, Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**American Courier Corporation, Intervening Defendant.**

**No. 67 C 1349.**

United States District Court
N. D. Illinois, E. D.

March 18, 1968.

Warren W. Wallin, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendants.

Richard V. Guardino, Garden City, N. Y., for intervening-defendant.

### MEMORANDUM AND ORDER

Before SCHNACKENBERG, Circuit Judge, and ROBSON and WILL, District Judges.

ROBSON, District Judge:

Plaintiff, B.D.C. Corporation, seeks the vacation and annulment of an order of the Interstate Commerce Commission, and an injunction against its enforcement. It invokes this three-judge court pursuant to 28 U.S.C. § 2325. For the reasons set out below, the court concludes that the order of the Interstate Commerce Commission should be affirmed.

The major issue in this case is whether the Interstate Commerce Commission's order was based on substantial evidence. Plaintiff argues that the ruling was arbitrary and without sufficient evidentiary foundation. Defendants contend that the order is within the broad discretion and expertise of the Commission and is based on substantial evidence on the record as a whole.

By application filed March 8, 1963, American Courier Corporation (formerly the Armored Carrier Corporation) of Bayside, New York, sought a permit authorizing operations in interstate or foreign commerce as a commercial carrier by motor vehicle, over irregular routes, of (1) described commercial papers and documents ("cash letters"), and (2) audit and accounting media, and business papers and records between Chicago, Illinois, and points in Indiana

and Michigan. Plaintiff, an Illinois corporation, was the only carrier opposing the application.

Hearings were held before Joint Board No. 73 in 1963 in Chicago. This board in its report and recommended order found that no need existed for the proposed services. (Exhibit B, Complaint.) On December 16, 1966, the I.C.C. (Operating Rights Review Board No. 2) affirmed the joint board's recommended denial of part 1 ("cash letters") of the application, but found that the public convenience and necessity required the services proposed under part 2 (audit media) of the application. The latter order was affirmed by the Commission, Division 1, Acting as an Appellate Division, on July 14, 1967. The intervening defendant (applicant below), the American Courier Corporation, did not appeal from the denial of its application for authority to carry "cash letters," but the plaintiff herein did appeal and is here attacking the Commission's order with respect to its grant of authority to American Courier to carry audit media.

In the course of its opinion, the I.C.C. admitted that plaintiff's services were not shown to be inadequate and that plaintiff would stand to lose traffic if the requested authority were granted to the American Courier Corporation. American Courier Corporation Extension —Northern Indiana Points, 103 M.C.C. 298 (1966) (Exhibit A, Complaint). The Commission further assumed there was a need for the services in the geographical area requested. Normally, said the Commission, the plaintiff would "be entitled to protection against additional competition." "However," it continued, "this policy is not absolute."

The I.C.C. said that in this case, an "unusual" situation was presented "of a protestant [the plaintiff] commonly controlled through management with a competitor [Banker's Dispatch Corporation] of one of the supporting shippers [Statistical Tabulating Corporation—S.

T.C.]." The president of plaintiff, one Jerry Stergios, was at the time of the hearing also the president of Banker's Data Center, a data-processing company in competition with Statistical Tabulating Corporation, one of American Courier's supporting shippers. Mr. Stergios also owned about 70% of a holding company which owned or controlled about 18,000 shares of Banker's Data Center (the competitor of S.T.C.) and 100% of B.D.C. (the carrier-plaintiff herein). The Commission noted that

"[S.T.C.] is unwilling to tender traffic [to B.D.C.] for fear that information concerning the identity and location of customers necessarily revealed to this carrier would be used to its disadvantage [as a competitor of Banker's Data Center]. As protestant [B.D.C.] is the only motor carrier offering a feasible audit media service, the shipper's only alternatives are private carriage or less desirable forms of transportation." (Id., at 303)

The Commission then stated that it has long been watchful lest situations arise which have a potential for discrimination, and that it had denied applications by carriers "controlled or closely related to the supporting shippers." The I.C.C. emphasized that the opportunities for discrimination had to be more than "insubstantial."

The opinion went on to apply these principles to this case:

"The situation before us differs from the cited decisions in that the controlled carrier [plaintiff B.D.C.] is a protestant attempting to protect its position rather than an applicant seeking authority. * * * The possibilities for discrimination and favoritism are not only the same as in the cited decisions. They are enhanced by the fact that [plaintiff B.D.C.] is the only carrier offering the type of service proposed, and even though there is no evidence that B.D.C. has, or would, abuse its position, it is con-

*ceivable* that at some future time, the pressure to favoritism and discriminatory practices *might* become irresistible." (Emphasis added.) Id., at 304. Even though the Commission was overruling the opinion of a lower board, it was not disputing the facts found by that lower board. It is clear that the Commission was giving added weight to this admitted factor, and in so doing was using its "expertise" in the transportation industry.

■ Generally, an order of the I.C.C., or any other administrative body, will be upheld if it is based upon appropriate findings supported by substantial evidence on the record as a whole, even though the reviewing court might disagree with the Commission's conclusions or consider them contrary to the weight of the evidence. E. g., Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Interstate Commerce Commission v. Union Pacific R.R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308 (1912); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Armored Carrier Corp. v. United States, 260 F.Supp. 612, 617 (E.D.N.Y.1966); Administrative Procedure Act § 10(e), 5 U.S.C. § 706.

■■ Although an agency has used its expertise to make a decision, substantial evidence must nevertheless exist to support that decision. It is clear, however, that once substantial evidence is found to support the agency's ruling, the reviewing court should be very reluctant to overturn an agency's use of expertise. E. g., United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38 (1945); Consolo v. Federal Maritime Commission, 383 U.S. 607, 620–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Some courts

have even demanded that the agency's ruling be "clearly erroneous" before they would disturb the order. E. g., Converse v. United States, 109 F.Supp. 807 (N.D.Cal.1953). While this test may not be entirely appropriate, it is clear that in this case the I.C.C. was exercising its expertise in determining that there were possibilities for future discrimination because of the relationship between B.D.C. and Banker's Data Center. This court must therefore decide whether there exists substantial evidence on the record as a whole to support this determination. Along with this inquiry, this court must judge whether the I.C.C. went beyond the bounds of reason in granting the authority to American Courier to carry audit media.

■ Reference is made in the transcript (p. 204) to the fact that Mr. Stergios was then president of both B.D.C. and Banker's Data Center.* This fact is not disputed by the plaintiff (plaintiff's brief, pp. 16–17). Also mentioned at the same page is evidence of the need for the services of American Courier in the audit media field. The witness for Statistical Tabulating Corporation was asked whether it would use the services of B.D.C. He responded:

"No, I would not. * * * Mr. Sturges [sic] is the president of an organization that is in competition with us. * * * [A]t one time he asked me over the telephone if we could avail ourselves of his services, and I told him I would be most reluctant to do so in view of his being the principal of a competing organization. If a competitor supplies delivery services to our clients, you can appreciate our concern, maybe the work we are waiting for winds up in our competitor's place of business. Furthermore, we, no more than United States

---

* B.D.C. contends that since Mr. Stergios is now no longer the dual president, the rationale for the I.C.C.'s decision has disappeared. Aside from the fact that he is still the dual Chairman of the Board,

this court cannot consider this new evidence. E. g., United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 715, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

Steel is [sic] interested in having their competitors know where their clients reside or who they are, so I would most naturally be very adverse to using the other service for the reasons as stated."

Although this witness admitted that they had used B.D.C. when their clients requested it, and for some of their own interplant deliveries, he did emphasize that they intended to stop all use of plaintiff, B.D.C.

As outlined above, the Commission used this evidence to show that the plaintiff could not fill the needs of at least this class of shippers, which class was in competition with Banker's Data Center. The Commission took the position that adding another carrier would best serve the public convenience and necessity. This court cannot say that this conclusion is unreasonable or arbitrary. This is so especially since B.D.C. still has a monopoly in the carriage of "cash letters." It is also important to note that American Courier did not appeal this portion of the ruling. B.D.C.'s contention at the oral argument that its competitive position is effectively destroyed, since cash letters and audit media go hand in hand, and that if you get one you get the other, falls by its own weight since American Courier cannot, by virtue of the denial of part 1 of their application, carry cash letters. Therefore, if anyone is favored, it is the plaintiff, since it is the only company which can carry both items without violating its operating authority.

It thus appears that there exists substantial evidence to support the Commission's conclusions and that it did not abuse its discretion in granting limited operating authority to the American Courier Corporation. On this basis, therefore, the ruling of the Interstate Commerce Commission is hereby affirmed, and the application of plaintiff to enjoin the operation of that order is hereby denied.