**MIDWEST EMERY FREIGHT SYSTEM, INC., Safeway Truck Lines, Inc., and Refrigerated Food Express, Inc., Plaintiffs,**

**Subler Transfer, Inc., Plaintiff-Intervenor,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Coldway Food Express, Inc., Defendant-Intervnor.**

**No. 68 C 1070.**

United States District Court
N. D. Illinois, E. D.

Nov. 21, 1968.

Edward G. Bazelon, Axelrod, Goodman & Steiner, Chicago, Ill., for Midwest Emery Freight System, Inc., and Safeway Truck Lines, Inc.

William J. Boyd, Boyd & Blanshan, Chicago, Ill., for Refrigerated Food Express, Inc., and Subler Transfer, Inc.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for the United States.

Barry Roberts, I. C. C., Washington, D. C., for the I. C. C.

Joseph M. Scanlan, Chicago, Ill., for defendant Coldway Food Express, Inc.

Before KERNER, Circuit Judge, and HOFFMAN and AUSTIN, District Judges.

AUSTIN, District Judge:

Plaintiffs, interstate motor carriers, seek to set aside, annul and suspend the

grant of a certificate of public convenience and necessity to Coldway Food Express, Inc. for single-line shipment from Chicago to certain eastern states of meat, meat products, meat by-products and articles distributed by packinghouses. Plaintiffs Midwest Emery and Safeway provide a similar direct line service and Refrigerated Food and Subler Transfer, by tacking authority, also serve from Chicago to the eastern states.

Coldway since 1962 has operated from Chicago via an interchange with Hofer Motor Transportation which transported shipments from Chicago to Cleveland, Ohio, from which point Coldway transported to the eastern market. Coldway's application for direct-line service was heard by the examiner in a consolidated hearing with ten other motor carrier applicants seeking authority to serve the Chicago area. Coldway and Nightway, one of the other applicants, sought and were granted unrestricted site service from Chicago; six of the other applicants, including plaintiffs Refrigerated and Subler (both already serving the Chicago site of South Chicago Packing and seeking to serve its Lemont site), sought and were granted authority to serve the plant sites of South Chicago Packing at Lemont and Chicago; three of the other applicants also seeking to serve the Lemont and Chicago plant sites were denied certificates.

The hearing before the examiner took seven days, and the extensive transcript of over 1000 pages, including more than 60 exhibits, has been submitted to the Court. Six of the applicants appealed to Division I of the Interstate Commerce Commission and on May 20, 1968 the Commission approved and affirmed the decisions of the examiner.

▆▆▆▆ Our scope of review of that order is limited to determining only whether the findings made by the Commission are supported by substantial evidence on the entire record and whether its conclusion as to public convenience and necessity has a rational basis in the facts found. Administrative Procedure Act, 5 U.S.C.A. § 1009. We are mindful

that the criteria by which the Commission makes its determination of public convenience and necessity are not subject to review. No delineation of factors to support such a determination has been expressed in the statute. 49 U.S.C.A. § 307. Congress has entrusted the Commission with a "wide range of discretional authority" to draw that conclusion from "the infinite variety of circumstances which may occur in specific instances". United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945); Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051 (1945).

Plaintiffs assert that the Commission order is arbitrary and capricious; that proper findings were not made; and that the order is not supported by substantial evidence for the reason that the Commission and the examiner

(1) considered the past performance of the Hofer-Coldway service from Chicago and on that basis viewed applicant Coldway as a competitor in the Chicago market and concluded that the grant of single-line authority was only a substitute for the joint-line service which would not materially change the competitive situation in Chicago;

(2) based the need for single-line service upon evidence of traffic which originated from points out of Chicago and granted authority in the Chicago market although there was no evidence, and no finding made, that existing service in Chicago was inadequate or unsatisfactory;

(3) granted unrestricted authority to Coldway which will make it competitive on traffic originating at points west of Chicago through interline arrangements with western carriers although determining that unrestricted authority would not materially change the competitive situation, and based the grant upon insubstantial evidence regarding traffic from the west.

▆▆▆▆ The finding of the Commission that Coldway was not a new com-

petitive factor in the area is supported by substantial evidence in the record. The Hofer-Coldway operation transported from Chicago for the period 1962 through April 1967, 195,565,236 pounds of the product and the volume increased from 15,720,834 pounds in 1962 to 50,-643,383 pounds in 1966; that in April 1967 there were transported 131 shipments, about two-thirds of which originated outside the Chicago zone—about 30 originating in Denver. (Ex.Rep.* p. 9). Coldway, although headquartered in Sidney, Ohio, has offices in Chicago with full time employees and actively solicits the Chicago shippers. The traffic handled since 1962 was effected by joint-line with three motor carriers—Chrispens Truck Line, Budreck Truck Line, and Hofer. Chrispens was purchased by Subler and Budreck was purchased by Gerald I. Subler, controlling shareholder of Subler. These are no longer available to Coldway. Its past performance in the area is a relevant consideration to the grant of the certificate. Allard Express, Inc. v. United States, 263 F.Supp. 171, 174 (W.D.Wis., 1966); Interstate Motor Lines, Inc.—Extension—San Francisco, 46 M.C.C. 351, 357 (1946); Taylor Extension of Operations—Fuel Oil, 14 M.C.C. 607, 609 (1939).

In connection with the Coldway application, the examiner heard the testimony of five shippers who supported its application—Armour & Co., which transports via piggyback into Chicago; four Chicago shippers, South Chicago Packing, Graver, Silverman & Wexler, and Marhoefer; and that of Scott Truck Lines, a motor carrier transporting shipments from Denver to Chicago which are destined for the eastern market. Evidence and documents were submitted regarding shipments of the described products, and their volume, from plant sites in Chicago as well as shipments from the north and west destined for the eastern states, (Ex.Rep. 16, 17, 22, 24, 25, 26, 28, 30) and the record shows that the Chicago shippers as well as Armour and Scott Truck Lines experienced difficulties in finding existing motor carriers in Chicago to serve their requirements for transport to the east. (Ex.Rep. 18, 19, 20–23, 24, 25, 28, 29, 30, 31). It would extend this opinion unduly to repeat that evidence.

■■ Plaintiffs have evaluated that evidence as failing to show unsatisfactory or inadequate existing Chicago and out-of-Chicago service stressing that the examiner found that evidence conflicting and that he failed to make a finding that inadequacy of existing service existed. The weight accorded to evidence presented in this case is a matter for the Commission. Merchants Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227 (1931). Further, the Commission was not obligated to specifically find that the transportation by plaintiff carriers was inadequate in order to find that additional transportation service was necessary in the public interest in the particular area. That was merely one of the elements for its consideration but was not an indispensable finding.[1] This principle has

---

* Examiner's Report.

1. Sloan's Moving & Storage Co. v. United States, 208 F.Supp. 567, 570 (D.C.Mo., 1962) aff'd 374 U.S. 95, 83 S.Ct. 1687, 10 L.Ed.2d 1026; Convoy Co. v. United States, 200 F.Supp. 10, 13 (D.C.Ore., 1961) aff'd 382 U.S. 371, 86 S.Ct. 553, 15 L.Ed.2d 426; Southern Kansas Greyhound Lines, Inc. v. United States, 134 F. Supp. 502, 506–507, (D.C.Mo., 1955) aff'd 351 U.S. 921, 76 S.Ct. 779, 100 L.Ed. 1453; Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756, 760 (D.C. Va., 1950) aff'd 340 U.S. 802, 71 S.Ct.

68, 95 L.Ed. 590; Beard-Laney Inc. v. United States, 83 F.Supp. 27, 32 (D.C. S.C., 1949) aff'd 338 U.S. 803, 70 S.Ct. 64, 94 L.Ed. 486; Campus Travel, Inc. v. United States, 224 F.Supp. 146, 148 (D.C.N.Y., 1963); Dance Freight Lines, Inc. v. United States, 149 F.Supp. 367, 372 (D.C.Ky., 1957); St. Johnsbury Trucking Co. v. United States, 99 F. Supp. 977, 981 (D.C.Vt., 1951); C. E. Hall & Sons, Inc. v. United States, 88 F.Supp. 596, 601 (D.C.Mass., 1950); Lang Transportation Corp. v. United States, 75 F.Supp. 915, 930 (D.C.Cal., 1948).

been most recently reasserted in United States v. Dixie Highway Express, 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed. 2d 639 (1968) wherein the Court stated that a specific finding of that nature is not a prerequisite although "the Commission should consider the public interest in maintaining the health and stability of existing carriers."

 Plaintiffs protest the conclusion of the Commission that the grant of single line authority to Coldway unrestricted as to interlining from the west would not materially alter the existing competition. That contention has been effectively answered by defendants on the basis that interlining is a right and duty of common carriers and that the Commission has a well-established policy that restrictions against interlining are imposed only where it is shown to be necessary in the public interest since restrictions on operating rights create undesirable complications. Fox-Smythe Transportation Co. Extension—Oklahoma, 106 M.C.C. 1, 18 (1967); Liquid Transporters, Inc., Extension, Columbia Park, Ohio, 76 M.C.C. 685, 687 (1958); Eldon Miller, Inc., Extension—Liquid Chemicals, 73 M.C.C. 538, 540 (1957); P.I.E.—Control—West Coast Fast Freight, Inc., 60 M.C.C. 301, 319 (1954). In any event, the extent to which plaintiffs claim their operations would be affected is not shown and is therefore speculative and conjectural. The Commission's conclusions that any restriction of Coldway's application would preclude Coldway from continuing the same service it has performed for years and would adversely affect shipper and carrier which have used that service finds substantial basis in the record evidence.

 An additional point has been mentioned by plaintiffs in their brief— i. e., that the examiner should have separated the Coldway application from those which sought authority to plant sites of Chicago shippers. Only two of the applicants sought unrestricted service—Coldway and Nightway. The examiner proceeded on a consolidated hearing of all eleven applications. That decision—whether to proceed through consolidation or by separate consideration— is normally for the examiner to determine so long as the basic requirements designed for protection of private as well as public interest are observed.

We have reviewed the record and are satisfied that the decision made and the procedures followed in this case are consistent with applicable law and that the findings and conclusions conform to the evidence and are supported by substantial evidence on the record as a whole.

The motion of the plaintiffs to enjoin and set aside the order of the Commission is denied and the order of the Commission is affirmed. An order in accord therewith has this day been entered.