SEABOARD COAST LINE RAILROAD
COMPANY, Plaintiff,

v.

UNITED STATES of America

and

Interstate Commerce Commission,
Defendants,

v.

RAILWAY LABOR EXECUTIVES' ASSO-
CIATION, Intervening Defendants.

Civ. A. No. 5422.

United States District Court
E. D. Virginia,
Richmond Division.

April 30, 1968.

Richard A. Hollander, Richmond, Va., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., C. Vernon Spratley, Jr., U. S. Atty., Richmond, Va., for United States of America.

Robert W. Ginnane, General Counsel, Leonard S. Goodman, Associate General Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

William H. King, McGuire, Woods & Battle, Richmond, Va., Edward J. Hickey, Jr., William J. Hickey, Mulholland, Hickey & Lyman, Washington, D. C., for Railway Labor Executives' Ass'n.

Before BUTZNER, Circuit Judge, and LEWIS and MERHIGE, District Judges.

BUTZNER, Circuit Judge:

Seaboard Coast Line Railroad Company protests, primarily on procedural grounds, an order of the Interstate Commerce Commission that included "bumped" junior railway employees in the class of persons affected by Seaboard's acquisition of joint control of the Richmond Broad Street Station.[1] We find that the commission had authority to enter its order and the result it reached was proper.

The background of this proceeding can be briefly sketched. For many years employees of the Chesapeake & Ohio Railway Company operated the Main Street Station in Richmond, Virginia, for the joint use of C&O and Seaboard. In 1958 the commission granted Seaboard authority to use Broad Street Station.[2] Seaboard's move to Broad Street Station decreased the number of C&O employees needed at Main Street Station. We held in Railway Labor Executives' Ass'n v. United States, 216 F.Supp. 101 (E.D.Va.1963) that C&O's displaced Main Street personnel were "employees affected" within the meaning of § 5(2) (f) of the Interstate Commerce Act [49 U.S.C. § 5(2) (f)] and were entitled to the statute's protection at the expense of Seaboard. Upon remand the commission decided that the C&O employees should receive the same protection granted Sea-

---

1. Seaboard Air Line R.R.—Control—Richmond Terminal Ry., 330 I.C.C. 103 (1967). The plaintiff's name was changed from Seaboard Air Line Railroad Comany to Seaboard Coast Line Railroad Company on July 1, 1967.

2. Seaboard Air Line R.R.—Control—Richmond Terminal Ry., 312 I.C.C. 507 and 803 (1959).

board employees, and ordered the cost of this protection to be borne by Seaboard.[3] Seaboard responded by granting protection to the C&O employees who had worked at Main Street Station, but it denied protection to the junior employees who worked in the same seniority district and were "bumped" by their seniors from Main Street.

In 1966, more than three years after the order on remand, the Railway Labor Executives' Association, contending the protection extended to junior C&O employees, petitioned the commission for clarification of its order. Seaboard answered that RLEA should be denied relief because of laches and failure to comply with the commission's General Rules of Practice, particularly rule 101 [49 C.F.R. § 1.101]. Seaboard did not deny that it refused protection to junior employees. It asserted that the order was limited to C&O employees actually working at Main Street Station, and that a change to include the junior employees elsewhere was prohibited by lapse of time. On May 12, 1967, in its report on reconsideration, the commission held that junior employees of C&O, located in the same seniority district as the Main Street Station employees, were entitled to protection if they were affected by the transaction.[4]

■ The commission's rule 101(e) requires that petitions for rehearing, reargument or reconsideration except for good cause shown and upon leave granted, must be filed within thirty days after the date of service of the decision or order. There are several reasons the 30-day limitation is not applicable here.

RLEA sought clarification under rule 102 [49 C.F.R. § 1.102], which permits a petitioner seeking relief, other than that specifically covered under other commission rules, without imposing a time limit. In its 1963 order the commission referred "to those employees of the Chesapeake & Ohio Railway Company previously employed in the operation of the latter's Main Street Station * * *." RLEA sought to learn whether the commission by use of this phrase simply identified the C&O employees initially affected, or whether the phrase limited the scope of protection to the Main Street employees even though Seaboard's move caused these employees to "bump" others elsewhere in the district.

While the junior employees were not expressly mentioned in this court's 1963 decision or the commission's 1963 order, they were implicitly included. Speaking for the court, Judge Bryan wrote:[5]

"All 'employees affected' are under the aegis of the Act. The only question is whether they are 'affected': Are they touched sufficiently by the transaction?"

Neither this court nor the commission had authority to exclude junior employees who might be affected by the transaction and neither undertook to do so. Both the court and the commission provided that protection should be at the expense of Seaboard. Seaboard's refusal to protect the junior employees transfers a portion of the expense from the railroad to the junior employees, a result neither contemplated nor authorized by the court or the commission.

3. Seaboard Air Line R.R.—Control—Richmond Terminal Ry. Co., 320 I.C.C. 52 (1963). The conditions for the protection are contained in the Washington Job Protection Agreement of 1936, modified by the conditions prescribed in Oklahoma Ry.—Trustees' Abandonment, 257 I.C.C. 177 (1944).

4. Seaboard Air Line R.R.—Control—Richmond Terminal Ry., 330 I.C.C. 103 (1967). On August 23, 1967, the commission denied Seaboard's petition for reconsideration of the order entered May 12, 1967.

5. Railway Labor Executives' Ass'n v. United States, 216 F.Supp. 101, 102 (E.D Va.1963).

The protection of junior employees is not a novelty. In its report of May 12, 1967, the commission said: [6]

" * * * [W]e have taken cognizance of the fact that in rail coordinations the number of employees affected tend to exceed the number of jobs eliminated because of the so-called 'bumping' process under which, through the exercise of seniority rights established by collective bargaining agreements, an employee whose position is eliminated may displace another, who, in turn, may displace an employee junior on the seniority roster involved until usually most junior employees from the standpoint of seniority are furloughed from employment, as appears to be the case here. See Southern Ry. Co.—Control—Central of Georgia Ry. Co., 317 I.C.C. 557, 562."

■■ Thus the order now under attack was not inconsistent with the prior ruling. It simply expressly stated what previously had been implicit. The commission did nothing more than clarify its order. But even if the commission's 1967 proceedings are considered to be a "rehearing," we find no infirmity. " * * * [R]ehearings before administrative bodies are addressed to their own discretion. * * * Only a showing of the clearest abuse of discretion could sustain an exception to that rule." United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946). We find no abuse of discretion.

■ Apart from rules 101 and 102, adequate statutory authority exists for the action of the commission. Section 5(9) of the Act provides: [7]

"The Commission may from time to time, for good cause shown, make such orders, supplemental to any order made under paragraph * * * (2) * * * of this section, as it may deem necessary or appropriate."

Action under this section, without the 30-day limitation of rule 101, is appropriate with respect to employee protective conditions. Brotherhood of M.W.E. v. United States, 366 U.S. 169, 172 n. 2, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961).

■ The commission properly found RLEA is not barred by laches even though its petition was filed a little more than three years after the 1963 order. Although Seaboard criticizes RLEA's lack of diligence, it was not misled by RLEA's inaction. Seaboard moved from Main Street Station on April 26, 1959. It is obvious that the move was not influenced by reliance on an interpretation that the commission's 1963 order excluded junior employees or RLEA's subsequent delay in moving for clarification. The principal cases upon which Seaboard relies for application of the doctrine of laches point to a detrimental change in the position of the adverse parties. E. g. Bradley v. United States, 268 F.Supp. 871, 876 (D.Conn. 1967); Smith & Solomon Trucking Co. v. United States, 120 F.Supp. 277, 283 (D.N.J.1954). No detrimental change in position appears here.

■ The commission properly directed C&O to make its records available to Seaboard. No claim is made that these records have been destroyed. Establishing outside earnings to be credited against the claims of junior employees presents no insuperable problem. Courts and arbitrators frequently surmount comparable difficulties.

■ Finally, we conclude there is no merit in Seaboard's allegation that the commission arbitrarily based its decision upon findings not supported by evidence of record in violation of the Administra-

---

6. Seaboard Air Line R.R.—Control—Richmond Terminal Ry., 330 I.C.C. 103, 106 (1967).

7. Title 49 U.S.C. § 5(9).
   Section 16(6) of the Act [49 U.S.C. § 16(6)] authorizes the commission to suspend or modify its orders upon such notice and in such manner as it deems proper.

tive Procedure Act.[8]   The commission was not required to find which junior employees, if any, had been adversely affected by the transaction.   It was correct in saying, "The question, however, of whether and to what extent, if any, these junior or 'bumped' employees may be adversely affected by our approval * * * [of Seaboard's Broad Street application] * * * is a matter for settlement by the parties under the arbitration provisions of the prescribed conditions or by the courts."   There is nothing unusual about this procedure. The commission generally does not determine the actual effect, if any, on individual employees.   In this instance if the parties do not reach agreement on individual employees, the controversy can be submitted for arbitration to the Section 13 Committee of the Washington Job Protection Agreement of 1936.   We conclude the absence of a finding pertaining to the effect, if any, on individual junior employees does not destroy the validity of the commission's order.

The complaint and this action will be dismissed.

---

8.   Seaboard relies particularly upon those portions of the Act set forth in 5 U.S.C. §§ 556–558 and 702–706.