**RAYE AND COMPANY TRANSPORTS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1936.**

United States District Court, W. D. Missouri, Southwestern Division.

April 3, 1970.

As Amended Oct. 23, 1970.

Herbert C. Casteel, Carthage, Mo., Harry Ross, for Hays and Hays, Washington, D. C., for plaintiff.

John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States.

Fritz R. Kahn, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Tom B. Kretsinger, Wentworth E. Griffin, for Ruder, Griffin & Dysart, Kansas City, Mo., for Protestants Western Gillette, Inc., and Frozen Foods Express.

Before GIBSON, Circuit Judge, BECKER, Chief Judge, and OLIVER, District Judge.

## MEMORANDUM OPINION AND FINAL JUDGMENT

BECKER, Chief Judge.

Plaintiff Raye and Company Transports, Inc. ("Raye" hereinafter) filed this civil action in equity seeking the annulment and suspension of orders of the Interstate Commerce Commission ("ICC" hereinafter) in a proceeding docketed before the Commission as MC–118196 (Sub–No. 6) Raye and Company Transports, Inc. -Dairy Products Midwest to West. Raye requested the issuance of an order (1) restraining the enforcement of the challenged orders, (2) convening a court of three judges to hear the case on the merits and (3) entering a judgment suspending, annulling, enjoining and setting aside in whole the challenged orders. The restraining order was issued, a court of three judges was convened and the case was heard on the merits.

Western Gillette, Inc., and Frozen Foods Express, protestants in the proceedings, were permitted to intervene in this action.

### Jurisdiction

Jurisdiction exists pursuant to the provisions of Sections 1336, 1398, 2284, and 2321 to 2325 of Title 28, U.S.C.; Sections 17 and 205(g) of the Interstate Commerce Commission Act, 49 U.S.C. § 17 and § 305(g); and Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 702–706.

### Plaintiff's Contentions

In its complaint plaintiff Raye contended that the challenged orders were illegal, null and void because:

(1) The orders contravene applicable provisions of the Administrative

Procedure Act which are identified in its brief as Sections 7(c), 7(d) and 8(b) which are 5 U.S. C. §§ 556 and 557.

(2) The orders contravene provisions of the National Transportation Policy. (49 U.S.C. §§ 1, 301, 901 and 1001)

(3) The orders constitute arbitrary and capricious action.

(4) The orders constitute an abuse of discretion by the defendant ICC.

### Defendants' and Intervenors' Contentions

In their pleadings and briefs the defendants and intervenors oppose each of the plaintiff's contentions. The defendants in opposition contend primarily that:

(1) Congress has delegated to the ICC broad and exclusive authority to determine public convenience and necessity. Therefore orders of the Commission should not be set aside, modified or disturbed by a court if they are within the scope of the Commission's statutory authority and are based on adequate findings which in turn are supported by substantial evidence in the record as a whole.

(2) The Commission properly concluded that authority over the broad territory sought by plaintiff is not required by the present or future public necessity; that the burden was on the plaintiff to show that the public convenience and necessity require its proposed service; that plaintiff failed to prove that the existing carriers cannot meet the reasonable transportation needs of the public in the area involved; and that there is no substance to plaintiff's "captive traffic" theory.

(3) The findings of the Commission satisfy all legal requirements.

Section 706 of Title 5, U.S.C., governs the judicial review of the Commission's action in this case. That section states that review shall be on the "whole record" and that the reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be" arbitrary, capricious, abusive of discretion, or otherwise unlawful or contrary to a constitutional right, power, privilege or immunity, or in excess of agency jurisdiction, or unsupported by substantial evidence, or arrived at without observance of lawful procedures or "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." Accordingly, the decision and action of the Commission in this case can lawfully be affirmed by this Court if six standards are met:

(a) the hearing procedures were fair and lawful, Section 706(2) (D), Title 5, U.S.C., Clemens v. Central Railroad Co. of New Jersey (E.D.Pa.) 264 F.Supp. 551, 572;

(b) evidence was received on the material factual issues, Seaboard Coast Line R. Co. v. United States (E.D. Va.) 283 F.Supp. 866; ABC Freight Forwarding Corp. v. United States (S.D. N.Y.) 169 F.Supp. 403, 406;

(c) the findings of fact are supported by substantial evidence, Illinois Central R. R. v. Norfolk & W. R. R., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162;

(d) the findings of fact are sufficient to resolve the crucial issues, Beaumont, S. L. & W. Ry. [Co.] v. United States, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed.2d 221; Capital Transit Co. v. United

States (D.D.C.) 97 F.Supp. 614;

(e) the correct legal standards were applied in determining the ultimate issues, United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Frozen Food Express v. United States (N.D.Tex.) 219 F.Supp. 131; and

(f) all regulations of defendant in arriving at the decision were lawful and valid as applied in this case, Matlack, Inc. v. United States (E.D.Pa.) 119 F. Supp. 617, 623.

*Basic Facts and Challenged Orders*

Prior to the filing of this proceeding under review, the plaintiff Raye held authority to transport dairy products from four midwestern states, Missouri, Arkansas, Oklahoma and Kansas to all points in an area composed of seven northwestern states, Washington, Idaho, Arizona, Montana, Nevada, Utah and Wyoming.

In its Sub–No. 6 application Raye sought a certificate of public convenience and necessity to transport:

" * * * dairy products (including cheese food and cheese spread) as defined by the Commission from points in Missouri, Arkansas, Oklahoma and Kansas (restricted to traffic originating in the state of Kansas), to points in Arizona, Colorado, New Mexico, California and El Paso, Texas, and empty containers or other such incidental facilities used in transporting the commodities specified and returned and rejected shipments and dairy products returned for salvage on return."

Protests to this application were filed by rail carriers and competing motor carriers, including the intervening defendants in this action.

Later Raye filed its Sub-No. 8 application for a certificate of public convenience and necessity authorizing it to transport:

" * * * (1) salvaged dairy products and (2) commodities exempt from economic regulation pursuant to provisions of section 203(b) (6) of the Interstate Commerce Commission Act when moving in the same vehicle at the same time with salvaged dairy products, from points in Washington, Oregon, Montana, Wyoming, Idaho, Nevada and Utah to points in Oklahoma, Kansas, Missouri and Arkansas, and empty containers or other such incidental facilities used in transporting the commodities specified above on return."

One motor carrier protested this Sub–No. 8 application, which in substance was later granted in its entirety by the ICC.

After hearing and report of the hearing examiner on the Sub–No. 8 application (to which Raye excepted) the ICC found that Raye had failed to prove a public need for the extensive additional authority sought and concluded that Raye should be awarded only the following additional authority to transport:

" * * * (1) dairy products from Springfield, Clinton and Carthage, Mo. to points in Colorado and (2) returned dairy products from points in Colorado to Springfield, Clinton and Carthage, Mo."

Plaintiff Raye secured some relevant temporary authority in MC118196, Sub–No. 7 TA. This authority was continued by the restraining order.

In its reply to a supplemental brief of the defendants, Raye admitted that, since the filing of this action, the ICC had issued additional authorizations to Raye to transport:

(1) Cheese from Neosho, Missouri, to points in California, Arizona and New Mexico (MC118196, Sub–No. 17);

(2) Dairy products from Hannibal and Carthage, Missouri, to points in California, New Mexi-

co, Arizona and Colorado (MC118196, Sub–No. 20); and

(3) Foods and other foodstuffs (except frozen foods) from plant sites and other facilities of Safeway Stores, L. D. Schreiber Cheese Company and of Carthage Creamery Company at Carthage, Missouri, to points in Arizona, California, Colorado, New Mexico and El Paso, Texas (M118196, Sub–No. 22).

In this connection the defendants urge in their reply brief that these later grants of authority render this case moot because "with the grant of authority in the instantly assailed proceeding, they cover virtually every movement as to which the shippers supporting the plaintiff's application testified." The defendants at the same time concede that technically Raye does not have all that it sought by the application under review and "to that extent continues to be entitled to review the Commission's actions." This latter concession is correct, so the review proceeding will not be dismissed as moot.

On consideration of the first standard of review noted above, it is concluded upon an examination of the record of the administrative proceedings that the hearing procedures were fair and lawful. The record discloses that all parties to the hearing, including plaintiff Raye, were given notice of the hearing and an opportunity to be heard. Raye was represented at the hearing by counsel, who was given ample opportunity to adduce evidence, to cross-examine hostile witnesses and object to the admission of other evidence and to present rebuttal testimony and evidence. Further, Raye does not in its complaint here nor in its briefs raise any contention with regard to the fairness or lawfulness of the procedures at the administrative hearing.

Second, extensive evidence was taken on the material factual issues, principally upon the prime issue whether the public necessity supported the request that the certificates sought by plaintiff should be issued. The hearing lasted nearly three days and Raye had ample opportunity to cross-examine all adverse witnesses and to present evidence in its own behalf. Raye fully and effectively availed itself of these privileges.

On the third consideration, namely, whether the findings of fact are supported by substantial evidence, Raye contends that findings were insufficient in that (1) the Commission made no finding of the future need of the shippers who would patronize the transportation service for which authority was requested, (2) there was

"No mention of evidence adduced through a number of witnesses showing that large volumes of traffic would, in fact, be diverted from private to common carriage if the proposed service is made available on a permanent basis",

(3) there was no mention of testimony that the "proposed service must be made available *before* the market potential of the destination states sought as well as that of Utah, Oregon and Washington can be realized" and (4) generally, the statement of facts of the Hearing Examiner (whose report and findings were adopted by the ICC) "misstates and distorts the evidence of record".

Plaintiff argues with great force that the omission of the finding with regard to future need is a "total lack of a finding on an issue that is material" within the meaning of the case of Beaumont, S. L. & W. Ry. Co., *supra*. The hearing examiner found, among other things, however, that one of the proposed supporting shippers, L. D. Schreiber Company of Carthage, Missouri, asserted a "broad futuristic need to unspecified destinations * * * to include the pooling or consolidating of its traffic with that of other shippers into a single bill of lading consignment for forwarding to a diversity of consignees and destinations yet to be selected. A need also without specificity is foreseen for less-than-carload and less-than-truck-

load service." It was further found that Melny-Moony of Pueblo visualized substitution of Raye's services for retail dealers located in various places; that the program was hypothetical and that

"Neither the actual nor the hypothetical part loads of poultry indicate a need for transportation. Nor, after months of temporary authority does this record with eminence of (sic) clarity show forth just what type or kind of assembling and distribution service is proposed or performed by the applicant, whether alone or cooperatively with shippers and receivers, neither does the kind or quantity of the economy or the service clearly appear which this wholesaler-receiver envisions."

The hearing examiner also found that Clearfield Cheese Company of Clinton, Missouri,

"has in contemplation a future change from present methods, which to some extent would by pass the warehouse with direct deliveries of so called but unexemplified larger quantities to unnamed consuming points, said contemplated change being related to potential programmed but as yet undeveloped business, the deliveries of which this shipper eventually would provide with its own equipment, should applicant's distributive service prove unsatisfactory, in the event its temporary authority ripens into permanency."

It was also found with regard to L. D. Schreiber Company, Inc., that

"A future need is asserted for stopping truckloads in transit for partly unloading a vehicle short of its ultimate destination, for pooling or consolidating with other beneficial owners of traffic on a single bill of lading, also for less-than-truckload or less-than-carload service."

Raye does not specify other future needs upon which findings should have been made. Furthermore, it is not the duty of the administrative agency to make findings of fact upon all items of evidence submitted, nor even necessarily to answer each and every contention raised by the contestants to the hearing, but merely to make such findings which are sufficient to resolve the material issues. The Commission further found that "[c]omparatively few shipments have been made in the use of applicant's services under its existing temporary and permanent authorities" to haul the shipments for which the permanent authority was here sought. Further, findings were made that the truck lines with routes already established in the areas sought by Raye were sufficiently equipped to handle the needs of the prospective shippers who had not yet had occasion to use their services. These findings, particularly the last one, may reasonably obviate the necessity for any further detailed findings of future need on the part of the prospective shippers. Moreover, the shippers, who Raye claims will have future needs, are those mentioned above whom Raye may serve under the subsequently granted certificates.

■ Raye's additional contentions on this point are largely repetitions of earlier contentions discussed above. The fact that the Commission made no reference to evidence showing that large volumes of traffic would, in fact, be diverted from private to common carriage if the certificates were issued does not mean that the findings made were not sufficient to resolve the crucial issues. Such a finding is logically and reasonably implied in the finding that any future need can be handled by the truckers already established in the areas where Raye proposes to serve. Raye challenges that finding only obliquely, stating only that the irregular, stop-off routes which it proposes would offer less circuity than the present services, which entail the making of local connections with short-run haulers. In the record there is substantial evidence to support the conclusions of the Commission in this regard and the exercise of the power of the ICC

"not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies." United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38.

Further, it is well settled that the Commission need not make findings on every conceivable issue, but only "basic or essential findings, required to support [its] order." Fine & Jackson Trucking Corp. v. United States (D.C. N.J.) 65 F. Supp. 443; Sinett v. United States (D. C. N.J.) 136 F.Supp. 37. In Columbia Transportation Company v. United States (E.D. Mich.) 167 F.Supp. 5, 15, a three-judge court held:

> "Plaintiffs assert that the Commission's order ignored evidence offered by them, and recite evidence which they claim the Commission ignored. The fact that the Commission did not in its report discuss various portions of testimony offered by plaintiffs, and give its reasons why it did not accept such evidence as controlling its decision does not, in our opinion, constitute ignoring that evidence. Inasmuch as the Commission's report contained ultimate facts which it found from the record, it cannot be said that the Commission ignored any evidence that was before it. Failure to give to evidence the weight claimed for it by a party does not amount to ignoring such evidence."

Finally, Raye does not state specifically how the recital of facts by the hearing examiner "misstates and distorts" the evidence. An examination of the record and comparison of it with the examiner's statement of facts reveals no misstatement or distortions of the evidence. The examiner's inferences and findings were in this regard supported by substantial evidence and were not required to be cast in the language of the witnesses.

Raye next attacks the finding that the established transportation lines can provide reasonably satisfactory service of the type which the shippers seek in this action. Raye states that the record "does not contain any evidence whatsoever to support the stated conclusions"; that instead the evidence shows that the transportation lines now serving the desired territories are "completely unable to provide *any* service of the type that supporting shippers seek"; and that:

> "Carriers authorized to serve only points in California, Arizona, New Mexico and El Paso, Texas as destinations *cannot* provide 'ample opportunity' for shippers to obtain required 'combinations' for stops in transit for partial unloading."

Although the challenge here is explicitly made on the ground of the third standard set out above (that there was not substantial evidence to support the finding of fact), it may well be considered under the topic of the fourth standard (whether findings of fact were sufficient to resolve the crucial issues). So even assuming the factual contentions of Raye to be true, namely, that the established transportation lines are unable to render the type of local stop-off service which Raye professes to be able to render, the finding of the Commission that

> "Protestants can provide service to El Paso and points in New Mexico, Arizona, and California. These destinations cover a vast territory and provide ample opportunity for shippers to obtain a variety of combinations for stops in transit for a partial unloading. Shippers are not entitled as a matter of right to every point or combination of points which they might conceivably make a shipment when reasonably adequate existing services are available and they have failed to try such services,"

would suffice to support the Commission's conclusion that the public necessity and convenience would not be served by the issuing of the certificate sought by the plaintiff. The "Commission in

its administrative discretion must determine what the public convenience and necessity require." McLean Trucking Co. v. United States (M.D. N.C.) 63 F. Supp. 829, 831; cf. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051, where the United States Supreme Court stated:

"The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity."

Therefore, it would be within the scope of authority of the Commission to decide, when a carrier was able and willing to make circuitous local deliveries on a trip to a single destination, whether the opposed plan of fewer stops and local connections would better serve the public necessity and convenience. The function of the reviewing court is "limited to ascertaining whether there is a warrant in the law and the facts for what the Commission has done". Unless in some specific respect there has been a procedural or substantive error or an abuse of the Commission's discretion, the reviewing court is without authority to intervene. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821. This Court cannot substitute its own view concerning what should be done if the Commission's judgment has support in the record and the applicable law. Dance Freight Lines v. United States (E.D. Ky.) 149 F.Supp. 367.

Nevertheless, it appears that the facts in this case warrant the conclusion that the alternative method of transportation may better fit public convenience and necessity and that the established transportation lines offer substantially the same type of services which the plaintiff here seeks to provide. Evidence was adduced to show that, throughout the territories sought to be served by irregular single routes to be instituted by plaintiff, transportation lines had already established satisfactory networks of transportation. Such evidence is set out in the marginal notes.[1] Even should some necessity for "interlining" still remain,

1. Nearly all the evidence and testimony of record support the findings and conclusion of the Commission. A large part of the present needs and some of the "future needs" of the shippers, for which purpose plaintiff sought the certificate of public convenience and necessity under Sub-No. 6, were covered by the later issuance of certificates Sub-No. 22, Sub-No. 17 and Sub-No. 20. In addition to the "future needs" noted by the ICC and reported in the body of this opinion, Clearfield Cheese Company of Clinton, Missouri, indicated in the testimony of its general manager a need for shortline hauling to Provo, Salt Lake City, Clearfield, Logan and Smithfield in Utah, and to Phoenix and Tucson in Arizona; and of a "future need" for such trucking in "the valley from Bakersfield up to Sacramento" in California and to other points in Arizona. (Tr. 380–84) Robinson Brokerage Company indicated that they needed hauling "coming in from that direction of Lamar, Colorado; LaJunta, and then into Pueblo, up to Colorado Springs and into Denver" as well as other stops in Wyoming and New Mexico ("Raton"). (Tr. 170–71) Safeway, through its witness, testified to presently shipping from Carthage, Missouri, into Colorado, New Mexico and El Paso, Texas; to "Denver, Albuquerque, Clovis and El Paso," specifically, and to anticipated traffic in California and Arizona; that they had used Raye's temporary authority and had lost a customer in Pueblo, Colorado, because of the lack of such temporary authority before it was issued. (Tr. 215–225) Producers' Creamery Company anticipated "expanded sales in such states as Colorado, New Mexico and the other Western states." (Tr. 268) Their witness also stated that they had used the temporary authority of Raye to haul to Denver and Albuquerque (Tr. 269) and that they were not using rail service to Albuquerque, Clovis or Roswell at this time because of the "time in transit." (Tr. 267) Melny-Moony of Pueblo testified through their witness to now having customers "at Lamar, Las Animas, La-Junta, Lamar (sic), Rocky Ford, Pueblo, Colorado Springs, Denver, Walsenburg, Trinidad, Raton, New Mexico; Canon City" (Tr. 281); that they did business amounting to a million and a half dollars per annum; that they "are now procuring dairy products in Missouri, Kansas, Oklahoma"; and that they do much of their business presently in Arkansas (Tr. 282); that some typical points "which are in the origin areas" are "Fort Smith, Arkansas; Carthage, Missouri;

this would not conclusively indicate that the decision of the Commission to refuse to award the desired certificates was an abuse of discretion. Furthermore, the certificates awarded to Raye subsequent to the administrative hearing have done much to relieve any necessity for the extensive "interlining" which Raye undertook to show was unsatisfactory to certain of its prospective shippers. This essential finding was thus supported by substantial evidence on a view of the whole record in accordance with the third standard set out above.

▆▆▆▆▆▆ Raye's third major contention is that correct legal standards were not applied in determining the factual issues herein, in violation of the fifth standard above, because the orders of the Commission were contrary to the National Transportation Policy. This ·

policy is set out preceding Section 1 of Title 49, U.S.C., and reads as follows:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized

---

Hutchinson, Kansas; Springfield, Missouri," all of which are supplied from Clinton, Missouri. (Tr. 282) John A. Smith of Muskogee Dairy Products testified that future short distance needs for that firm were anticipated in Arizona, New Mexico, Colorado and California (Tr. 323), and in Oregon, California and Utah. (Tr. 324)

It can readily be seen from this brief summary of the testimony in this respect that most of the relief relative to present need was granted by virtue of the awarding of certificates Sub-No. 17 (cheese from Neosho, Missouri, to points in California, Arizona and New Mexico); Sub-No. 20 (dairy products from Hannibal and Carthage, Missouri, to points in California, New Mexico, Arizona, and Colorado) and Sub-No. 22 (foods from Safeway, Schreiber and Carthage Creamery in Carthage to points in Arizona, California, Colorado, New Mexico and El Paso, Texas). The evidence in respect of Clearfield Cheese indicated a future plan to use its own trucking services in the event that Raye's, if authority were granted, should prove unsatisfactory. Otherwise, the hauling of dairy products, as requested in the Sub-No. 6 application of plaintiff, was largely predicated on future needs, the development of which was not proved to be of sufficient probability to warrant the granting of a certificate. The shipments made by the prospective shippers on the grant of temporary authority to Raye were few, and at least some of them could have

been accomplished by the protestants. (Tr. 353, 361–2) The testimony, further, supports a finding that the future needs involving Robinson Brokerage Co., Producers' Creamery Co. and Muskogee Dairy Products were not proved convincingly to meet any required burden of proof herein. Robinson's witness, for instance, only testified that it would be a "great service" to be able to make deliveries at Raton and that such would "aid" in acquiring new customers in New Mexico. The contingency is obvious, as well as the uncertainty. Melny-Moony's witness testified that more sales could be made if potential customers were convinced that they could stay in the area by means of satisfactory transportation, while admitting that the Raye service had not hitherto been used "because of the temporary authority." (Tr. 291) Predictions of an increase in business ranging from $7,000 to $12,000 a month if the the authority were made permanent, on this evidence, must be deemed purely speculative. On cross-examination, the Muskogee Dairy Products witness testified that business in New Mexico, Arizona, California and El Paso, Texas, was "anticipated" for "sometime in the future." (Tr. 324) Where there was a present need but the applicant based its contentions on expansion, the evidence showed the present interline carriers might readily handle the present need, or that it was adequately met by the pre-existing certificates possessed by Raye.

officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense."

Raye states that the action of the Commission in this case "will adversely affect the long standing efforts to stem the tide to private carriage and 'gray area' operations"; and that it will allow Frozen Foods Express to "capture" all of the major traffic in the territory, which would be contrary to the policy of promoting efficient service inasmuch as it would discourage the effective trucking which competition promotes. In support of the latter contention, plaintiff quotes Mt. Hood Stages, Inc. Extension, 44 M. C.C. 535, where the Commission itself noted that "[b]oth the courts and the Commission have long recognized that reasonable competition is in the public interest. Regulated monopoly is not a complete substitute therefor. Competition hastens research and experimentation and induces refinements in service which might not otherwise be accomplished." The decision in this case, however, has not been shown to violate any of the objectives set out in the National Transportation Policy, but rather it has kept to the tenuous middle ground between the extremes of monopoly and of competition by prescribing a program whereby destructive and inefficient competition only is precluded, and the long single-destination routes are complemented by the interlining of local truck lines on a smaller scale. The disparate and inconsistent nature of the two objections Raye has interposed on this ground may support such a conclusion. In such a case, where there has been no plain and gross violation of the statutory policy, the rule of Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824, to the effect that the Commission is to find the facts and in the exercise of its judgment de-

termine public necessity, is applicable. No abuse of discretion appears in the action of the ICC. Therefore, the correct legal standards were applied and the fifth standard set out above was satisfied.

■ Raye's final contention is that the final order of the Commission is invalid because the Commission adopted the recommended order of the Hearing Examiner with modifications and did not expressly consider Raye's contention of "captive traffic," which was raised by it for the first time after the recommended order had been filed. Such a practice, it is argued, contravenes section 8(b) of the Administrative Procedure Act, Section 557(c) (3) (A), in that the contention raised was a "material issue of fact, law or discretion presented on the record," which the Commission did not consider. The issue presented, however, is one that is of necessity considered by the Commission impliedly in its determination of public necessity. The matter of whether degrees of monopolistic practice or of competitive practice are desirable or effective is considered tacitly in each case in the determination of public convenience and necessity consistent with the guidelines of the National Transportation Policy. Thus, it constitutes a theoretical point that need not be made the basis of a specific finding. The finding that the continuance of the transportation system in the desired area essentially as it is served national convenience and necessity makes it unnecessary to make additional findings of this nature. The new theory advanced by plaintiff on its petition for reconsideration was not a material issue of fact, law or discretion, within the meaning of Section 8(b), but merely constituted a new analysis of the same issues of facts, law or discretion which had been presented to the Commission at the hearing and before. As was said of Section 8(b) in Southern Railway Company v. United States (E.D. Va.) 180 F.Supp. 189, 195:

"The Congressional purpose in enacting the Administrative Procedure Act was not to exact a form of literary ex-

ercise from administrative bodies, but to insist on sufficient disclosure; and where the subsidiary findings are shown to have substantial support in the evidence and provide a rational basis for the Commission's determination of public convenience and necessity, this is enough. The term 'public convenience and necessity' is not defined in the statute, and in its application the Commission is given a 'wide range of discretionary authority.' * * * "

Finally, from what has been stated in this opinion, it is readily apparent that there were no regulations of the defendant ICC invalidly applied in this case and that the plaintiff was not required to sustain its claim by more than a preponderance of the evidence.

It is therefore

Ordered that the challenged orders of the defendant Interstate Commerce Commission be, and they are hereby, in all respects affirmed. It is further

Ordered that the claim for relief prayed for in the complaint herein be, and it is hereby, denied, and the costs herein taxed against the plaintiff.