**PERKINS FURNITURE TRANSPORT, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants, and Ferree Moving and Storage, Inc., Intervening Defendant.**

No. IP 70–C–161.

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 23, 1971.

---

John E. Lesow, James E. Lesh, and Lesow & Lesh, Indianapolis, Ind., for plaintiff.

Richard W. McLaren, Asst. Atty. Gen., Stanley B. Miller, U. S. Atty., Indianapolis, Ind., John H. D. Wigger, Atty., Department of Justice, Washington, D. C., for the United States of America.

Robert W. Ginnane, General Counsel, Hanford O'Hara, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Walter F. Jones, Jr., Indianapolis, Ind., John H. O'Hara, Indianapolis, Ind., for intervening defendant.

Before SWYGERT, Chief Circuit Judge, STECKLER, Chief District Judge, and HOLDER, District Judge.

## JUDGMENT ENTRY

PER CURIAM.

The action was brought in this three-judge District Court to annul, vacate, and set aside a report and order of the Interstate Commerce Commission. The order converted a certain contract-carrier by motor carrier permit to that of a common-carrier by motor vehicle certificate for the applicant and intervening defendant, Ferree Moving and Storage, Inc. The Commission proceeding entitled Docket No. MC–118696 (Sub–No. 4), Ferree Moving and Storage, Inc., Conversion Application, is reported at 110 M.C. C. 375.

This action is authorized by and the Court's jurisdiction is based upon Sections 17(9), 205(g) and (h) of the Interstate Commerce Act (Title 49 U.S.C. Sections 17(9) and 305(g) and (h)) and Title 28 U.S.C. Sections 2284, 2321 and 2325.

Ferree Moving and Storage, Inc., an Indiana corporation, with its principal office and place of business in the City of Munster, State of Indiana, prior to and on September 30, 1968 held a contract-carrier permit issued by the Interstate Commerce Commission to tranport (over irregular routes) mattresses, box springs, dormitory and institutional fur-

niture, and convertible beds, from Munster, State of Indiana, to points in Wisconsin, Michigan and Iowa, pursuant to a continuing contract with the Simmons Bed Company. After a hearing on February 19, 1969, the Interstate Commerce Commission on May 1, 1969 recommended denial of the September 30, 1968 application of Ferree seeking such conversion. Exceptions were filed by Ferree and opposed by the plaintiff. Division 1 of the Interstate Commerce Commission on September 5, 1969 granted the Ferree application seeking a conversion of such contract-carrier permit to a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common-carrier by motor vehicle, over irregular routes, of mattresses, box springs, dormitory and institutional furniture, and convertible beds, from the City of Munster, State of Indiana, to points in the State of Illinois, that part of the State of Michigan on and south of State of Michigan Highway 72, that part of the State of Ohio on and west of State of Ohio Highway 13 and on and north of United States Highway 50, that part of the State of Wisconsin on and south of the State of Wisconsin Highway 29, and that part of the State of Iowa on and east of United States Highway 69, restricted, however, as to origin point, to the plant site of Simmons Bed Company, located at or near the City of Munster, State of Indiana, and restricted also against the tacking of that authority with other authority held by applicant. The Commission's Division 1, acting as an Appellate Division on February 12, 1970 denied the protesting plaintiff's October 27, 1969 petition seeking reconsideration of such September 5, 1969 order granting the conversion application subject to the applicant's compliance within ninety (90) days with the provisions of Sections 215, 217 and 221(c) of the Interstate Commerce Act (Title 49 U.S.C. Sections 315, 317 and 321(c)).

The application of Ferree and the resulting Commission Order of September 5, 1969 in Commission proceeding entitled Docket No. MC–118696 (Sub–No. 4), Ferree Moving and Storage, Inc., Conversion Application (110 M.C.C. 375) in issue in this action emanated from a prior proceeding. The earlier proceeding involved an application of Ferree Moving and Storage, Inc. to which the plaintiff was a protestor. The prior Commission proceeding was entitled Ferree Moving and Storage, Inc., Extension-Sixteen States, Docket No. MC–118696 (Sub–No. 2). Ferree, while possessing such authorities, in 1966 applied in such Sub–No. 2 proceedings for separate common-carrier authority to transport mattresses, new furniture and kitchen cabinets from points in Indiana (except Munster and four other points) to points in sixteen (16) states—including all the states referred to immediately above in which he was authorized to operate. The Commission decided in such Sub–No. 2 proceeding that the proposed operation was required by the public convenience and necessity but stated that the issuance of a certificate would depend on Ferree divesting itself of the contract-carrier certificate it possessed or converting it to a common-carrier certificate. The intent of this directive was to prevent Ferree from conducting "dual operations" which are unlawful under Section 210 of the Interstate Commerce Act (Title 49 U.S. C. Section 310). Otherwise, Ferree would be able to serve certain common points under its contract-carrier authority and under its Sub–No. 2 authority. Ferree could have sold the permit, or it could have surrendered it for cancellation but elected the third alternative instruction of the Commission's order in the Sub–No. 2 proceeding by applying for the conversion of the contract-carrier permit to a common-carrier certificate.

■■ The plaintiff has not by separate action and does not here challenge the Commission's action in the Sub–No. 2 proceeding other than to observe that Feree's Sub–No. 4 proceeding was "artificially inspired" by the Commission's Sub–No. 2 order and plaintiff believes

that the Sub–No. 2 order does have an important bearing here. Plaintiff has a substantial interest in the Sub–No. 2 order, in that a large portion of its authority conflicts with that accorded Ferree in the Sub–No. 2 order. If Ferree is issued a certificate in the Sub–No. 2 case, a portion of the traffic now handled by plaintiff will be diverted to Ferree. The final outcome of Ferree's Sub–No. 4 application carries with it the final outcome of Ferree's Sub–No. 2 application. The defendants say the plaintiff's reason for participating in this litigation is open to question. Its opposition to the conversion proceeding in Sub–No. 4, defendants urge, is not based on its possible adverse effect since the plant-site and tacking limitations in Sub–No. 4 grant of common carrier authority are written in such a way that the competitive situation will not be changed at all. Thus, defendants conclude plaintiff's opposition in this action to the Sub–No. 4 order is clearly motivated by a desire to collaterally attack the Commission's order in the Sub–No. 2 proceeding. Neither plaintiff's reference to the Sub–No. 4 proceeding of Ferree and the Commission's order therein being "artficially inspired" by the Commission's order in the Sub–No. 2 proceeding, nor defendants reference to the plaintiff's present action as being a collateral attack on the Sub–No. 2 proceeding order, rise to the cogency of an absolute defense to plaintiff's action or as a basis for vacating the order of the Commission in the Sub–No. 4 proceeding. The plaintiff has sufficient interest to maintain the action against the Sub–No. 4 proceeding order without considering the Sub–No. 2 proceeding order for the reason that the grant of a common-carrier certificate to Ferree and its operation under such authority could presently and in the future affect the plaintiff's operation under its authority. The order in the Sub–No. 4 proceeding in issue in this action of the plaintiff cannot be vacated merely because of the order made in the Sub–No. 2 proceeding invited or suggested the Sub–No. 4 proceeding. However, we consider the effect of the Sub–No. 2 proceeding order relevant and material evidence in the Sub–No. 4 proceeding upon the element of public convenience and necessity and the Commission's duty under the National Transportation Policy including the duty to promote adequate, economical and efficient service, and of fostering sound economic conditions in transportation and the balancing of these requirements.

The parties agree that Ferree had the burden of sustaining its application in the Sub–No. 4 proceeding for a common-carrier certificate. It was required to prove that it was fit, willing and able properly to perform the service proposed and to conform to the provisions of Chapter 8 of the Interstate Commerce Act (Title 49 U.S.C. Section 301 et seq.) and the requirements, rules and regulations of the Commission thereunder, and that the proposed service, is or will be required by the present or future public convenience and necessity under Section 207 of the Interstate Commerce Act (Title 49 U.S.C. Section 307) and that as a common-carrier Ferree would hold itself out to the general public to engage in the transportation of a certain class of property by motor vehicle in interstate commerce.

The plaintiff's complaint alleges that the Commission's action was arbitrary, unlawful and void in that its order was not supported by the evidence and was contrary to law. This Court review will be limited to ascertaining whether the Commission was warranted by the facts and the law in its findings and order in the Sub–No. 4 proceedings. See United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). The Court is not concerned with the soundness of the Commission's reasoning or with the wisdom of its decision in the Sub–No. 4 proceeding. See Virginia Ry. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926); and Sims Motor Transport Lines, Inc. v. United States, 183 F.Supp. 113 (N.D.Ill.

1959), aff'd mem. 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019 (1960).

■■ The Commission's report and order is substantially supported, we believe, by the evidence and accords with the applicable law. The applicant has maintained its burden of proof before the Commission for the issuance of a certificate in lieu of its outstanding permit. The Commission considered all of the relevant factors of public convenience and necessity required by Section 207 of the Interstate Commerce Act (Title 49 U.S.C. Section 307) including such matters in evidence as the volume of traffic to be shipped and the adequacy of existing transportation services. The Act does not define public convenience and necessity and such is a matter subject to discretion of the Commission who have the expertise in matters of transportation. The Commission was entrusted by Congress with the execution of the United States of America's national transportation policy established by Congress. The Commission was warranted by the facts before it in finding that Ferree qualified and was entitled to a certificate under Section 207 of the Interstate Commerce Act (Title 49 U.S.C. Section 307) to be a common-carrier by motor vehicle as defined in Section 203(a) (14) of the Interstate Commerce Act (Title 49 U.S.C. Section 303(a) (14)).

The applicant has been in the trucking business, primarily in the household goods and new furniture field, since 1929 and has operated primarily as a family organization. The evidence of fitness and ability of Ferree is not questioned by the plaintiff. Ferree's terminal facilities are less than ten (10) minutes away from the plant of the Simmons Company in Munster, State of Indiana, and it usually had at least five (5) trailers spotted at the Simmons' plant available for its use. In 1968, Ferree handled a total of one thousand four hundred seventy-three (1,473) shipments for a total dollar income to Ferree of Fifty-seven Thousand Seven Hundred Twenty and Eighty-four Hundredths Dollars ($57,-720.84). Ferree's present service to the supporting shipper and the benefit to its customers is basically the same as that being provided by other competing carriers in that the equipment is essentially the same and the only difference being the ability of Ferree, due to the proximity of its facilities to that of the shipper, to provide service within a matter of minutes and could, if called upon, handle as high as twelve (12) truckloads for the shipper within twenty-four (24) hours. The shipper has made daily use of Ferree continuously since Ferree was granted the contract-carrier authority by the Commission in 1965. The shipper predicted it will continue to use the service of Ferree if it should be given a certificate to operate as a common-carrier and there would be no diversion of traffic because of a change in the contract-carrier status of Ferree. Hereafter, Ferree will hold itself out to the general public as available for the transportation of a class of property by motor vehicle in interstate commerce. The proposed service is required by the public now and in the future. The shipper and Ferree are aware that there will be changes in Ferree's relationship to the shipper if a common-carrier certificate be issued Ferree. Such changes will include the requirement of Ferree to publish and charge a tariff for shipper lettering on Ferree equiment; there will be no continuing contract between them; and there will be no furnishing of special transportation services of a contract-carrier. The need for Ferree's service in the past and future is particularly appealing to the shipper as it alleviated the shipper's problems relating to the handling of mixed shipments of crated and uncrated shipments of furniture as well as its service in providing multiple stops prior to making a final delivery. The plaintiff has been particpating to a limited extent in the shipper's traffic. Plaintiff will continue to do so should a common-carrier certificate he issued to Ferree under the Sub–No. 4 proceeding in lieu of its contract-carrier permit. Ferree

cannot by the limitations in the order in the Sub–No. 4 proceeding against "tacking" unjustly interfere with plaintiff's traffic in other areas although Ferree might compete with plaintiff for traffic of new shippers in the future from the City of Munster, State of Indiana. The elimination of service of Ferree to the supporting shipper would seriously hamper such shipper's operations and to the detriment of its customers. Other carriers' operations were unsatisfactory from the point of view of transportation on short notice and less than truckload shipments. The evidence does **not develop** the potential effect upon the public should Ferree have elected to abandon or sell the contract-carrier permit in issue as alternatives to that of the obtaining of a common-carrier certificate in lieu of the contract permit all of which were suggested by the Commission as a condition to its issuance of authority to operate in the proceeding Sub–No. 2. It is clear from these facts, however, that the abandonment of the permit with no replacement of Ferree's service to the shipper and its customers would not be convenient to the public, contrary to the national transportation policy and leave void a necessary transportation service.

■ The plaintiff erroneously contends that the evidence of Ferree's proposed service as a common-carrier in the Sub–No. 4 proceeding is that of a contract-carrier defined in Section 203(a)(15) of the Interstate Commerce Act (Title 49 U.S.C. Section 303(a) (15)) and a permit for such is authorized by Section 209(b) of the Interstate Commerce Act (Title 49 U.S.C. Section 309 (b)) and not that of a common-carrier defined in Section 203(a) (14) of the Interstate Commerce Act (Title 49 U.S. C. Section 303(a) (14)) and a certificate for such is not authorized by Section 207 of the Interstate Commerce Act (Title 49 U.S.C. Section 307). Plaintiff relies upon the case of Connell Transport Co., Inc., Conversion Application, 95 M. C.C. 312 (1964). The Commission in en-

tering its Sub–No. 4 order endorsed the holding in that case. The Connell case held that the applicant failed to prove shipper need for common rather than contract service. Plaintiff asserts the Ferree application should have failed because Ferree could not elicit from its supporting carrier any indication that the shipper needed common-carrier rather than the Ferree contract-carrier service. Indeed, plaintiff emphasizes such contention with the conclusive summarizing statement that the supporting shipper of Ferree could care less whether it had common or contract service as long as its needs were satisfied. The plaintiff's interpretation of the requirements for conversion so based on the Connell case is misleading. In the Connell case, there was no shipper testimony for the Commission to weigh as distinguished from the fact that shipper testimony was present in this case. The total absence of shipper testimony was also conclusive in the case of Eastern States Transp. Inc., Common Carrier Application, 99 M.C.C. 524 (1965), which followed the holding in the Connell case. It also held that the evidence of past operations alone while sufficient in a proceeding under Section 212(c) of the Interstate Commerce Act (Title 49 U.S.C. Section 312 (c)) did not provide the necessary showing for a common-carrier certificate under Section 207 of the Interstate Commerce Act (Title 49 U.S.C. Section 307) of the present or future public convenience and necessity required the proposed service. The proceedings were reopened in the Eastern States case by the Commission who then heard shipper testimony and granted the application. See Eastern States Transp. Inc., Common Carrier Application, 105 M.C.C. 443 (1967). The Commission in the Eastern States case said:

" * * * It was found therein (in the earlier proceeding) that an applicant in a case of this type should submit a detailed statement of past operations under the authority sought to be converted; it should offer to surrender

authority which has not been the subject of past operations; and it should offer shipper testimony which will demonstrate a need for its services as a common, rather than a contract carrier, citing Connell Transp. Co., Inc., Conversion Application, 95 M.C.C. 312. The prior denial of the application was based upon the failure of applicant to produce any shipper testimony. Applicant has now remedied this defect. The supporting shippers have established that they have used applicant's contract-carrier service, and that they have a definite need for the continuance of this service in common carriage. Consequently, the record shows that there is a public need for the requested conversion."

It is thus demonstrated by these two (2) cases that there was a total failure to offer shipper testimony and such holdings were not based upon the content of shipper's testimony. This is borne out by the Commission's decision in Hugh Major Conversion Application, 100 M.C.C. 410 (1966). The granting of the certificate in the second Eastern States case was not based upon the shipper's qualitative preference opinion for common over contract service, only that there was a continuing shipper need for service. The plaintiff's position that the Ferree shipper's testimony disclosed such shipper cared less whether it had contract or common-carrier service so long as its needs were satisfied disposed of the issue of public need for common-carriage is unsupportable in the law. The Commission is charged with such duty to determine such issue from all of the evidence. The Commission in the instant case recognized that the private feelings of a shipper are unreliable when it stated that no shipper can be counted upon or required to make such a distinction (110 M.C.C. at page 378). The Commission did as required in this case by considering the total effect of shipper testimony and granted the application of Ferree.